**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.

**RAYMOND ALCORTA (03),**

    Defendant.

**Case No. 13-40065-03-DDC**

**MEMORANDUM AND ORDER**

This matter comes before the court on prisoner Raymond Alcorta's Motion for Reduction in Sentence pursuant to 18 U.S.C. § 3582(c) (Doc. 407). Mr. Alcorta seeks a sentence reduction to time served because of the COVID-19 pandemic. *Id.* at 1–2. The government has responded (Doc. 408) and Mr. Alcorta has filed a Reply (Doc. 411). For reasons explained below, the court denies Mr. Alcorta's motion.

**I.  Background**

In November 2013, a grand jury returned a First Superseding Indictment charging Mr. Alcorta with knowingly and intentionally conspiring to distribute more than 500 grams of methamphetamine. Doc. 42 at 1–2. Once proved beyond a reasonable doubt, this charge violates 21 U.S.C. §§ 841(b)(1)(A), 846, and 18 U.S.C. § 2. *Id.* at 2. In October 2014, a jury convicted Mr. Alcorta on this charge and attributed more than 500 grams of methamphetamine to his conduct. Doc. 212 at 1–2. The Presentence Investigation Report ("PSR") calculated a total offense level of 40 and a criminal history category of I, producing a Guidelines sentencing range of 292 to 365 months' imprisonment. Doc. 255 at 19 (PSR ¶ 111).

Mr. Alcorta objected to the PSR's determination that he was an organizer/leader under § 3B1.1(a).  Doc. 253 at 5–6  (¶ 14).  And, he asked the court to vary downward from the Guidelines sentencing range and impose a sentence of 120 months' imprisonment.  *Id.* at 7 (¶ 17).  At the sentencing hearing, the court found that Mr. Alcorta's involvement met the standard for a manager/supervisor of the criminal activity at issue under § 3B1.1(c), but not a leader/organizer under § 3B1.1(a).  Doc. 306 at 46.  The court thus applied a two-level increase to Mr. Alcorta's base offense level, not the four-level increase applied by the PSR.  *Id.*  This ruling produced a total offense level of 38 and a criminal history category of I.  *Id.* at 46–47.  Mr. Alcorta's advisory Guidelines sentencing range was 235 to 293 months' imprisonment.  *Id.* at 47.  The court sentenced Mr. Alcorta to 240 months' imprisonment, followed by five years of supervised release.  Doc. 269 at 2–3 (Judgment).

Mr. Alcorta asserts that he currently is incarcerated at Terminal Island FCI.  Doc. 407 at 1.  He asserts that Terminal Island has had more than 672 positive COVID-19 cases and ten deaths.  *Id.* at 6.  He contends he "has a life-long history of asthma, which places him at imminent risk of serious complications or death" if he contracts COVID-19.  *Id.* at 1.  Mr. Alcorta contends he has served approximately six years of his sentence.  *Id.* at 2.  And that he is scheduled for release on March 7, 2031.  *Id.*

## II.     Legal Standard

Binding authority from our Circuit establishes that a "'district court is authorized to modify a [d]efendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so.'"  *United States v. White*, 765 F.3d 1240, 1244 (10th Cir. 2014) (quoting *United States v. Blackwell*, 81 F.3d 945, 947 (10th Cir. 1996)).  Title 18 U.S.C. § 3582(c)—commonly called the compassionate release statute—permits a court to modify a

term of imprisonment but only if certain exceptions apply. For many years, these exceptions required the Bureau of Prisons ("BOP") to bring a motion on a defendant's behalf. But in 2018, the First Step Act modified the compassionate release statute, and authorized a defendant to file his own motion for relief. First Step Act of 2018, Pub. L. No. 115-391, § A 603(b)(1), 132 Stat. 5194 (2018). This amendment authorized an inmate to make such a motion, but only after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A).

Mr. Alcorta asserts he has exhausted his BOP remedies because he submitted a request to his warden on May 28, 2020, received a denial on June 6, 2020, and more than 30 days elapsed between asking the warden for compassionate release and filing his motion in federal court on July 7, 2020. Doc. 407 at 2; Doc. 407-1 (compassionate release denial). The government concedes that Mr. Alcorta has exhausted his administrative remedies. Doc. 408 at 9.

Some courts have concluded § 3582(c)(1)(A)'s exhaustion requirement is jurisdictional. *See, e.g.*, *United States v. Walker*, No. 13-10051-EFM, 2020 WL 2101369, at *2 (D. Kan. May 1, 2020) ("The administrative exhaustion requirement is jurisdictional and cannot be waived."); *United States v. Read-Forbes*, No. 12-20099-01-KHV, 2020 WL 1888856, at *3–4 (D. Kan. Apr. 16, 2020) (deciding that exhaustion requirement is jurisdictional based on text, context, and relevant historical treatment of § 3582(c)'s various subsections). But, as explained next, other courts have concluded § 3582(c)(1)(A)'s exhaustion requirement is a claim-processing rule and not jurisdictional. The court adopts the claim-processing approach.

In *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020), the Sixth Circuit treated § 3582(c)(1)(A)'s exhaustion requirement as a claim-processing rule, not a jurisdictional bar. *Id.*

at 832–34.  Although claim-processing rules don't implicate the court's subject matter jurisdiction, the court must enforce them when properly invoked.  *Id.* at 833.  But, if not invoked, claim-processing rules are subject to waiver and forfeiture.  *Id.* at 834; *see also United States v. Spaulding*, 802 F.3d 1110, 1130–34 (10th Cir. 2015) (Gorsuch, J., dissenting) (explaining why "§ 3582(c) doesn't strip the district court of any of its preexisting post-judgment jurisdiction and is instead and again a claim-processing rule").

The Tenth Circuit hasn't yet decided whether § 3582(c)(1)(A)'s exhaustion requirement is jurisdictional.  So, the court must predict how our Circuit would decide the question.  The court finds the Sixth Circuit's decision highly persuasive and the court predicts the Tenth Circuit would adopt its reasoning.  Consistent with *Alam*, the court treats § 3582(c)(1)(A)'s exhaustion requirement as a claim-processing rule.

Because Mr. Alcorta waited 30 days after asking his warden to file a motion in federal court, he has satisfied the exhaustion requirement of § 3582(c)(1)(A).  And, even if he hasn't, the government explicitly has waived any objections to the exhaustion requirement.  So, the court now turns to the substance of Mr. Alcorta's motion.

### III.   Discussion

#### A. The court exercises its discretion when deciding whether "extraordinary and compelling reasons" exist.

Section 3582(c)(1)(A) authorizes district courts to reduce a term of imprisonment if, "after considering the factors set forth in Section 3553(a) to the extent that they are applicable," the court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's applicable policy statement is found in U.S.S.G. § 1B1.13. *United States v. Beck*, 425 F. Supp. 3d 573, 578 (M.D.N.C. 2019). As pertinent here, this policy statement provides that the court may reduce a term of imprisonment, after considering the § 3553(a) factors, if (1) "[e]xtraordinary and compelling reasons warrant the reduction," (2) "[t]he defendant is not a danger to the safety of any other person or the community," and (3) "[t]he reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

Application Note 1 to § 1B1.13 provides that extraordinary and compelling reasons exist "under any of the [four] circumstances set forth below" in (A) through (D). *Id.* § 1B1.13 application notes 1. Subdivision (A) of Note 1 provides that the medical condition of a prisoner may qualify him for compassionate release, if (i) he is suffering from a terminal illness, or (ii) he is suffering from a serious physical or medical condition that "substantially diminishes" his ability to provide self-care within the prison and he is not expected to recover. *Id.* § 1B1.13 application notes 1(A). Subdivisions (B) and (C) apply to age and family circumstances not invoked here. Subdivision (D) supplies a catchall provision: it applies when "[a]s determined by the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 application notes 1(D).

Mr. Alcorta plainly does not qualify under two of the four subdivisions in Note 1. He doesn't qualify under either of the two prongs described in Subdivision (A). Nothing suggests Mr. Alcorta "is suffering from a terminal illness"—prong (i)—or, as prong (ii) requires, that he has contracted a "serious physical or medical condition" and he "is not expected to recover

from" it.¹  § 1B1.13 application notes 1(A).  He is not 65 years old (Subdivision (B)) and nothing suggests that the "family circumstances" provisions in addressed in Subdivision (C) applies.

This leaves Subdivision (D).  The guidance in this subsection advises that § 1B1.13 applies when "[a]s determined by the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" of application note 1.²  *Id.* § 1B1.12 application notes 1(D).

A few courts have ruled that only the BOP may invoke the catchall provision of subdivision (D).  *United States v. Jackson* summarized the reasoning of one such decision:

> Congress gave the Sentencing Commission the mandate to decide what constitutes an extraordinary and compelling reason; the [First Step Act] did not expand the criteria for finding such a reason, but merely allowed defendants to file motions; there can be no relief under this statute without consistency with the policy statement; and the policy statement does not presently provide for a court determination of other reasons.

*United States v. Jackson*, No. 08-20150-02-JWL, 2020 WL 2812764, at *3 (D. Kan. May 29, 2020) (citing *United States v. Lynn*, No. 89-0072-WS, 2019 WL 3805349, at *2–4 (S.D. Ala. Aug. 13, 2019)).  But an "overwhelming majority of courts" have rejected this approach.  *Id*.  They instead have "concluded that a court may make the necessary determination that other circumstances warrant relief under this statute."  *Id.* (citations omitted).  In other words, "[w]hile the old policy statement provides helpful guidance, it does not constrain the [c]ourt's

---

¹      Prong (ii) also applies to "serious functional or cognitive impairment" and "deteriorating physical or mental health because of the aging process."  § 1B1.13 application notes 1(A)(ii).  Mr. Alcorta's motion does not invoke these alternatives.

²      As explained above, in Section II, § 3582 used to permit the BOP—but not inmates—to file a compassionate release motion.  But the First Step Act broadened § 3582, so an inmate now can file a motion.  *See* First Step Act of 2018, Pub. L. No. 115-391, § A 603(b)(1), 132 Stat. 5194 (2018).  The Sentencing Commission hasn't revised § 1B1.13 of the Guidelines since that amendment and so, the language used in this Guidelines provision still requires a motion by the BOP.  *See United States v. Jackson*, No. 08-20150-02-JWL, 2020 WL 2812764, at *3 (D. Kan. May 29, 2020).

6

independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)." *Beck*, 425 F. Supp. 3d at 579; *see also Jackson*, 2020 WL 2812764, at *3 (assuming, for purposes of deciding the motion, that court is not limited to circumstances set forth in subdivisions (A) through (C)); *United States v. O'Bryan*, No. 96-10076-03-JTM, 2020 WL 869475, at *2 (D. Kan. Feb. 21, 2020) ("In the wake of the First Step Act, numerous courts have recognized the court can determine whether extraordinary and compelling reasons exist to modify a sentence—and may do so under the 'catch all' provision . . . ."); *United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) (concluding that the correct interpretation of § 3582(c)(1)(A) is that when a defendant brings a motion for a sentence reduction under the amended provision, the court can determine whether extraordinary and compelling reasons—outside those delineated in subdivisions (A)–(C)—warrant granting relief).

The court joins this prevailing view, concluding that it may decide whether "extraordinary and compelling reasons" warrant compassionate release.

### B. Mr. Alcorta has not established that "extraordinary and compelling reasons" warrant compassionate release.

Mr. Alcorta contends he "has a life-long history of asthma," increasing his risk of complications or death should he contract COVID-19. Doc. 407 at 1. He asserts his asthma "substantially diminishes [his] ability to provide self-care" while incarcerated because he lacks access to "safe and sanitary conditions" to limit his virus exposure. *Id.* at 12–13.

The government concedes that Mr. Alcorta's asthma "qualifies as an extraordinary and compelling circumstances for this [c]ourt's consideration of a sentence reduction." Doc. 408 at 16–17. But, the government argues, Mr. Alcorta's medical records "report that he is currently fine" and needs his inhaler only rarely. *Id.* at 17. The government contends the court should not

7

"reward" Mr. Alcorta with a sentence reduction. *Id.* Mr. Alcorta replies that reducing his sentence is not a "windfall," given the circumstances of the COVID-19 pandemic. Doc. 411 at 3. Mr. Alcorta also reports he "regularly require[s] the use of his inhaler," sometimes even "multiple times" in a day. *Id.* at 6.

To be sure, it is regrettable that Mr. Alcorta is incarcerated during this pandemic. It is also regrettable that he suffers from an asthma condition. But the court isn't convinced that this condition qualifies him for release. The court reaches this conclusion "after considering the factors set forth in [18 U.S.C.] § 3553(a) to the extent they are applicable"—the rubric § 3582(c)(1)(A) instructs the court to follow. Four of those statutory sentencing factors are particularly germane here. The next four paragraphs discuss them.

### 1. Nature and Circumstances of the Offense[3]

On April 27, 2013, police arrested drug couriers Javier Vega and Karmin Salazar near Russell, Kansas. *United States v. Alcorta*, 853 F.3d 1123, 1129 (10th Cir. 2017). Mr. Vega gave police permission to search his car, and officers discovered four pounds of methamphetamine hidden in a fake automotive battery. *Id.* Police also seized five mobile phones and various documents from the car. *Id.* Two months later, police arrested Adrienne and Angela Lopez near Liberal, Kansas, after finding four pounds of methamphetamine in their car after a traffic stop. *Id.* Police also seized mobile phones and various documents from their car. *Id.*

After listening to recorded phone calls from prison, police learned the two deliveries were connected. *Id.* The recordings, text messages on the seized mobile phones, and seized

---

[3] Some of the facts discussed in parts 1–4 come from the PSR. Mr. Alcorta did not object to any aspect of the report relied on in this Order. Doc. 255 at 22 (PSR ¶ 135). Other facts come from Mr. Alcorta's direct appeal to the Tenth Circuit, where he challenged the sufficiency of the evidence against him.

documents with Mr. Alcorta's name on them connected Mr. Alcorta to the conspiracy. *Id.* at 1129–31. The Tenth Circuit reviewed the sufficiency of the evidence against Mr. Alcorta, holding that "a reasonable juror could be convinced beyond a reasonable doubt that [Mr. Alcorta] was an integral part, probably the leader, of a conspiracy to distribute methamphetamine." *Id.* at 1136–37.

To conclude with the obvious, Mr. Alcorta committed a serious felony offense. The nature and circumstances of this offense do not favor Mr. Alcorta's motion.

### 2. History and Characteristics of the Defendant

Before this offense, Mr. Alcorta had minimal criminal history. Doc. 255 at 14–15 (PSR ¶¶ 73–78). Other than a few relatively minor traffic infractions, Mr. Alcorta had one prior California Superior Court conviction involving methamphetamine. *Id.* He received a 180-day custody sentence followed by three years of probation for that conviction. *Id.* at 15 (PSR ¶ 78).

Mr. Alcorta suffers from an asthma condition. Because of his health condition and minimal criminal history, this factor favors Mr. Alcorta's request.

### 3. The Need for the Sentence to Reflect the Offense's Seriousness, to Provide Just Punishment, and to Afford Adequate Deterrence to Criminal Conduct

When the court sentenced Mr. Alcorta, it adhered to the statutory mandate that it impose a sentence that was "not greater than necessary." Mr. Alcorta received a significant but, in context, appropriate sentence. Reducing that sentence by more than 70% would produce a sentence that no longer reflects the seriousness of Mr. Alcorta's criminal conduct. Likewise, such a reduced sentence no longer would furnish adequate deterrence to criminal conduct or provide just punishment. These factors weigh against Mr. Alcorta's motion.

### 4. The Sentencing Range Established for the Applicable Category of Offense Committed by the Applicable Category of Defendant

Reducing Mr. Alcorta's sentence to the time he has served so far would reduce it well below the applicable Guidelines range. No new circumstance justifies such a disparity.[4]

### C. Conclusion

In sum, the pertinent sentencing factors in 18 U.S.C. § 3553(a) do not favor the reduction Mr. Alcorta's motion seeks. Indeed, the primary factor favoring his request is the fact that he regrettably suffers from an asthma condition. The court recognizes that this condition has the potential to increase the severity of the sentence beyond the 240 months already imposed. *United States v. Mel*, No. CR TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) ("The fact that Mel has been incarcerated . . . during a serious outbreak of COVID-19 inside the facility sufficiently increased the severity of the sentence beyond what was originally anticipated . . . ."). But these factors haven't increased the sentence's severity to the point where an approximately 72-month custody sentence is sufficient. The court thus denies Mr. Alcorta's Motion for Sentence Reduction under 18 U.S.C. § 3582(c) (Doc. 407).

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Alcorta's Motion for Sentence Reduction pursuant to 18 U.S.C. § 3582(c) (Doc. 407) is denied.

**IT IS SO ORDERED.**

**Dated this 12th day of August, 2020, at Kansas City, Kansas.**

                                            **s/ Daniel D. Crabtree**
                                            **Daniel D. Crabtree**
                                            **United States District Judge**

---

[4] The court is mindful of the other factors identified by § 3553(a). They are not pertinent, however, to the current motion.